UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

...............................................................X

In re:                                                                    Chapter 13

    HOWARD L HENDERSON,

                                       Case No: 1-08-48268-jmm

               Debtor.

...............................................................X


**MEMORANDUM DECISION ON DAMAGES FOR VIOLATION OF
THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(k)**


Steven Amshen, Esq.
Petroff Amshen, LLP
1795 Coney Island Avenue Suite 3 Brooklyn,
New York 11230
*Attorneys for Debtor*

Fernando C. Rivera-Maissonet, Esq.
Hinshaw & Culbertson, LLP
800 Third Avenue 13th Floor New York, NY
10022
*Attorneys for Deutsche Bank, as trustee for
American Mortgage Securities Inc.*

## **INTRODUCTION**

Howard L Henderson (the "Debtor") seeks damages from Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc. (the "Creditor") for its willful violation of the automatic stay under 362(k) of title 11 of the United States Code (the "Bankruptcy Code").  In 2008, the Creditor foreclosed on the Debtor's real property commonly known as 108-30 Liverpool Street, Jamaica, New York (the "Property").  The foreclosure sale occurred one day after the Debtor filed this bankruptcy case.  The Creditor purchased the Property at the foreclosure sale, closed on the sale, recorded the referee's deed, and commenced actions to evict the Debtor and the Debtor's tenants from the Property.  The Creditor refused to convey the Property back to the Debtor after the Creditor learned the foreclosure sale violated the automatic stay and was void *ab initio*.  Instead, in 2011, Creditor commenced an action in New York state court requesting a declaratory judgment that the 2008 foreclosure sale was void because it was conducted in violation of the automatic stay, notwithstanding there was no dispute that the sale was void.  In March 2014, after obtaining declaratory relief, Creditor conveyed the Property back to the Debtor.  Then, the Creditor informed the Debtor that interest had continued to accrue while the Property was in Creditor's name and Debtor owed the Creditor almost $1,000,000 – significantly more than what was owed to the Creditor at the time of the 2008 foreclosure sale.

Creditor claims it did not willfully violate the automatic stay because it was unaware of the Debtor's bankruptcy case when it conducted the foreclosure sale.  Creditor argues it was justified in refusing to convey the Property back to the Debtor until it received a declaratory judgment because Creditor was negotiating with the Debtor and the Debtor refused to settle his

claim for damages.  Creditor also argues Debtor's claims for actual and punitive damages are unsupported.

For the reasons set forth below, the Court finds that Creditor's failure to reinstate title to the Debtor for almost five years is an egregious violation of the automatic stay entitling the Debtor to punitive as well as actual damages.  Debtor is awarded $327,000 in compensatory damages and $1,308,000 in punitive damages.  In addition, Creditor is enjoined from seeking to collect any amounts in addition to what was due and owing to Creditor on the note and mortgage as of December 5, 2008, which was the date of the stay violation.  Lastly, Debtor may seek attorneys' fees and costs in prosecuting its Bankruptcy Code section 362(k) claim by motion filed within fourteen days of entry of this memorandum decision.

## JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 157(a), (b)(1) and (b)(2)(A) and 1334(b), and the Eastern District of New York Standing Order of Reference, dated August 28, 1986, as amended by the Order, dated December 5, 2012.  Debtor's claim for damages for Creditor's violation of the automatic stay is a core proceeding.  *In re Ames Dep't Stores, Inc.*, 542 B.R. 121, 141, n.79 (Bankr. S.D.N.Y. 2015) (citing *Eastern Air Lines, Inc. v. Rolleston* (*In re Ionosphere Clubs Inc.*), 124 B.R. 635, 638 (S.D.N.Y. 1991)).  Accordingly, this Court has subject matter jurisdiction to hear and determine the Debtor's claims.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## **PROCEDURAL HISTORY**

The Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on December 4, 2008. *In re Howard L Henderson*, Case No. 08-48268, ECF No. 1.[1] The Court dismissed the case on March 6, 2009, and closed the case on March 16, 2009. *See* Ord. Dismissing Chapter 13 Case, ECF No. 16; Ord. to Close Dismissed Case, ECF No. 20.

On October 13, 2021, the Debtor moved to reopen the case to permit the Debtor to recover damages for Creditor's violation of the automatic stay. *See* Mot. to Reopen Chapter 13 Case, ECF No. 23. On March 4, 2022, this Court vacated the Order dismissing this case to permit the Debtor to pursue his claims against Creditor. *See* Ord. Reopening Debtor's Chapter 13 Case, ECF No. 39; Hr'g Tr. 8:1-18, Jan. 27, 2022, ECF No.107.

The Court directed the parties to complete discovery by July 22, 2022, but extended the deadline to May 15, 2023. *See* Ord. Setting Disc. Schedule, ECF No. 41; Am. Ord. Setting Disc. Schedule, ECF No. 42; So Ordered Letter Extending Disc., ECF No. 53. The Court further extended the discovery deadline after the Debtor failed to appear for his deposition. *See* Ord. Compelling Debtor's in Pers. Dep., ECF No. 56.

On December 13, 2023, both parties moved for summary judgment. *See* Debtor's Mot. Summ. J., ECF No. 58; Cr. Mot. Summ. J., ECF No. 60; Debtor's Affirmation Opp'n, ECF No. 62; Cr. Mem. Law Opp'n, ECF No. 63. The Court heard oral argument on February 13, 2024. H'rg Tr. Feb, 13, 2024, ECF No. 105. At that hearing, the Court preliminarily ruled that Creditor willfully violated the automatic stay by refusing to convey the Property back to the Debtor. *Id.* at 11:8-16:19. The Court also advised the parties that due to disputes as to material facts regarding the Debtor's damages and Creditor's laches defense, the Court was unlikely to grant

---

[1] Documents filed on the docket of the above-captioned bankruptcy case are hereinafter referred to as "ECF No. __."

4

either Motion for Summary Judgment. *Id.* at 17:16-18:15. At the parties' request, the Court

agreed not to issue a decision and adjourned the hearing for approximately 60 days for continued

settlement negotiations. *Id.* at 9:24-20:21. On April 12, 2024, the Court referred the parties to

mediation. *See* Mediation Ord., ECF No. 70. The mediation did not result in settlement. H'rg

Tr., 4:14-19, July 11, 2024, ECF No. 75.

On July 11, 2024, the Court ruled on the Motions for Summary Judgment. *See* Ord. Den.

Debtor's Mot. Summ. J., ECF No.73; Ord. Den. Cr. Summ. J. Mot., ECF No. 74; H'rg Tr., 4:14-

5:7, July 11, 2024, ECF No. 75. The Court held that the Creditor violated the automatic stay.

H'rg Tr., 6:5-10 – 8:12-21, July 11, 2024, ECF No. 75. However, the Court denied Debtor's

Motion for Summary Judgment for an award of $1,500,000 in actual damages finding there were

disputes as to material facts related to damages. *See* Debtor's Mot. Summ. J., ECF No. 58; H'rg

Tr., 5:6-25 – 6:1-4, July 11, 2024, ECF No. 75. Additionally, the Court denied the Debtor's

request to bar Creditor from asserting a defense of laches. *Id.* at 6:10-15.

The Court scheduled an evidentiary hearing for October 29, 2024, respecting Debtor's

claims for actual and punitive damages and Creditor's laches defense. *See* Ord. Scheduling

Evidentiary Hr'g, ECF No. 77. The parties adjourned the evidentiary hearing from time to time.

*See* Letter Appl. Adjourn Dec. 17, 2024, Conf., ECF No. 79; Resp. to Adjournment Req., ECF

No. 80; Ord. Scheduling Evidentiary Hr'g, ECF No. 86.

Trial proceeded on April 9, 2025, and June 10, 2025. Hr'g Tr. April 9, 2025 ("Trial Day

1 Tr."), ECF No. 98; Hr'g Tr. June 10, 2025 (Trial Day 2 Tr."), Debtor's Mem. Law Supp. Post-

Trial Br., Ex. 2, ECF No. 102-2.

The Court heard testimony from the Debtor, Jordon Manfro ("Manfro"), and Gina Feezer

("Feezer"). Manfro is a partner at the law firm of Knuckles & Manfro, LLP. Trial Day 2 Tr.

25:5-21.  Knuckles & Manfro, LLP was previously known as Knuckles & Komosinski, P.C.  *Id.* at 25:11-12.  Knuckles & Komosinski ("Foreclosure Counsel") represented Creditor in the foreclosure action against the Debtor.  *Id.* at 27:10-16.  Feezer is a Senior Loan Analyst in the law department of Omity Group, Inc.  *Id.* at 41:19-42:2.  Onity Group, Inc. is the parent company to PHH Mortgage Corporation ("PHH").  *Id.* at 42:19-20.  PHH was the servicer for Creditor's mortgage on the Property.  *Id.* at 42:11.

The parties completed post-trial briefing on September 19, 2025.  Cr. Mem. Law Opp'n, ECF No.100; Debtor's Mem. Law Supp. Post Trial Br., ECF No. 102; Debtor's Resp. to Cr. Post-Evidentiary Hr'g Initial Br., ECF No. 103; Cr. Resp. Debtor's Post-Evidentiary Hr'g Initial Br., ECF No.104.

## BACKGROUND

### The Debtor's Background

The Debtor, a fifty-three-year-old man, served in the United State Army from 1990 to 1993.  Trial Day 1 Tr. 36:25 – 37:4, 38:4 – 38:12.  After leaving the Army, the Debtor joined the National Guard.  *Id.* at 38:13 – 38:21.  In December of 1997, the Debtor joined the New York City Police Department.  *Id.* at 37:17-18 – 39:4-6.  The Debtor was a first responder to the September 11, 2001, terrorist attacks on the World Trade Center.  *Id.* at 37:12-16; 41:7 – 45:8.  The Debtor was deployed to Iraq with the National Guard from 2003 to 2004.  *Id.* at 39:10 – 16; 46:18 – 25; 47:1 – 3.  The Debtor suffers from, among other things, post-traumatic stress disorder, sarcoidosis, and degenerative joint disease of the ankles, which he attributes to his service with the Army, National Guard, and the New York City Police Department.  *Id.* at 48:18 – 25; 49:1 – 25; 50:1 – 6.  The Debtor is divorced and testified his wife of fourteen years left him due to the stress created by the loss of the Property.  *Id.* at 50:21; 64:25 – 65:1-3; 66:3 – 6.

<u>The Property and the Foreclosure Action</u>

The Debtor purchased the Property in 1996.  *Id.* at 36:25 – 37:2.  The Property has three residential units that the Debtor leased from time to time.  *Id.* at 70:5-13.  On August 24, 2005, Debtor executed a promissory note (the "Note") in the original principal amount of $457,000 in favor of Creditor's predecessor in interest.  Fixed Rate Note, Cr. Ex. GG.  Debtor 's obligations under the Note are secured by a mortgage (the "Mortgage") on the Property.  *Id.*  On August 22, 2007, the Creditor commenced a foreclosure action (the "2007 Foreclosure Action") respecting the Property in New York State Supreme Court, County of Queens (the "State Court").  Stip. Of Agreed Material Facts ("Stip. Facts") ¶ 1; Cr. Ex. GG.  The Creditor obtained a Judgment of Foreclosure and Sale on September 29, 2008, and scheduled a foreclosure sale for December 5, 2008.  Stip. Facts ¶ 2.  The 2007 Judgment of Foreclosure and Sale recites that $473,744.55 was due to Creditor as of September 29, 2007.  Cr. Ex. II.

On December 5, 2008, one day after the Debtor commenced this bankruptcy case, a referee conducted an auction sale for the Property.  Stip. Facts ¶ ¶ 2, 4.  Creditor purchased the Property for $1,000.  *Id.*  The Creditor recorded the referee's deed on December 18, 2008.  *Id.*

The Debtor testified that prior to the sale, he called Foreclosure Counsel and informed a secretary that he filed for bankruptcy.  Trial Day 1 Tr. 59:4-8, 17-20.  Manfro testified that Foreclosure Counsel had no record of receiving the Debtor's call and there is no indication that Foreclosure Counsel was aware of the bankruptcy filing prior to the foreclosure sale.  Trial Day 2 Tr. 30:22-31:5.  However, Manfro also testified that in 2008, a phone call would have been memorialized by a note on Foreclosure Counsel's paper file, and Foreclosure Counsel no longer had the paper file.  *Id.* at 34:15-21.

The Debtor believed the bankruptcy filing stayed the foreclosure sale. Trial Day 1 Tr. 61:7-12. The Debtor's intent was to modify the mortgage on the Property, and he retained counsel to assist him. *Id.* The Debtor learned from his attorneys that he no longer owned the Property. *Id.* at 61:13-17. The Debtor believed there must have been a mistake and that he still owned the Property until a real estate broker visiting the Property informed him that Creditor purchased the Property, and inquired when the Debtor would vacate. *Id.* at 62:1-9. Debtor testified the real estate broker left after the Debtor showed the broker the documents from the Bankruptcy Case. *Id.* at 62:2-63:6.

In July 2009, Debtor moved in State Court for an Order restraining Creditor from continuing its action to evict the Debtor from the Property. Cr. Ex. LL. The affidavits in support of Debtor's motion alleged the Creditor conducted the foreclosure stay in violation of the automatic stay. Cr. Ex. LL. On July 10, 2009, State Court judge Janice A. Taylor entered an Order to Show Cause that temporarily restrained Creditor from evicting the Debtor. Cr. Ex. LL.

The Debtor filed a second chapter 13 case on July 30, 2009, that was dismissed on October 8, 2009. Stip. Facts ¶ 5, 6. The Creditor filed a notice of appearance on the docket of the Debtor's second bankruptcy case. Debtor Ex. 33. The Debtor filed a third chapter 13 case on August 4, 2010, that was dismissed on October 14, 2010. *In re Howard L Henderson*, Case No. 10-47423-cec (Bankr. E.D.N.Y. 2010).

In March or April 2011, Creditor moved in the 2007 Foreclosure Action for an Order vacating the Judgement of Foreclosure and Sale, discontinuing the 2007 Foreclosure Action, discharging the referee, and canceling the *lis pendens* on the Property. Cr. Ex. MM. On June 23, 2011, the State Court judge entered an Order granting Creditor's motion. *Id.* However, Creditor

did not file a corrective deed restoring title to the Property to the Debtor after it obtained entry of that Order.

In addition to moving in the 2007 Foreclosure Action, in April 2011, Creditor commenced a second foreclosure action (the "2011 Foreclosure Action") in State Court for the Property.  Cr. Ex. NN.  The Complaint in the 2011 Foreclosure Action also requested declaratory relief that the referee's deed from the 2007 Foreclosure Action be deemed null and void.  *Id.* The Debtor answered and counterclaimed for damages resulting from Creditor's violation of the automatic stay and interference with Debtor's use and enjoyment of the Property.  Cr. Ex. OO. Creditor answered Debtor's counterclaims.  Cr. Ex. PP.  Debtor moved for summary judgment to declare the referee's deed void and for an award of money damages on his counterclaim.  *See* Cr. Ex. RR.  By Memorandum decision, entered September 13, 2013, the State Court granted Debtor's Motion for Summary Judgment to the extent of declaring the referee's deed to be void but denied the motion as to damages.  *Id.*.  An Order and Judgment memorializing the decision was entered on March 3, 2014.  Debtor Ex. 14.  On March 7, 2014, Creditor recorded the Order and Judgment, which restored title to the Property to the Debtor.  *Id.*

In or about September 2015, Creditor moved for summary judgment on the remaining relief requested by Creditor in the 2011 Foreclosure Action.  Cr. Ex TT.  The motion was granted in October 2015.  *Id.*  On January 16, 2019, the State Court entered a Judgment of Foreclosure and Sale stating that $882,119.16 was due as of August 3, 2017.  Cr. Ex. VV.  The Property was sold at auction to Creditor on April 26, 2019, and a referee's deed was recorded in September 2019.  Cr.  Ex. WW.

On or about December 24, 2020, Debtor and Creditor agreed to vacate the 2011 Foreclosure Action Judgement of Foreclosure and Sale and the 2019 referee's deed.  Cr. Ex. YY. A stipulation and order was entered by the State Court on September 24, 2021.  *Id.*

## DISCUSSION

### The Creditor Willfully Violated The Automatic Stay

The Court previously ruled that Creditor willfully violated the automatic stay.  Hr'g Tr. Feb. 13, 2024, ECF No. 105, H'rg Tr. July 11, 2024, ECF No. 75.  For the sake of completeness, the Court summarizes its ruling and provides the legal underpinnings for its findings and conclusions.

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws, designed to relieve the financial pressures that drove debtors into bankruptcy." *Bayview Loan Servicing LLC v. Fogarty (In re Fogarty),* 39 F.4th 62, 71 (2d Cir. 2021) (quoting *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998)); *See In re Lehman Bros. Holdings*, 433 B.R. 101, 112 (Bankr. S.D.N.Y. 2010), aff'd, 445 B.R. 130 (S.D.N.Y. 2011) ("[N]othing is more basic to bankruptcy law than the automatic stay, and nothing is more important to fair case administration than enforcing the stay violation.").  As "the automatic stay is imposed by Congressional mandate and not by court order," no court action is needed for the stay to become effective.  *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992).  In the Second Circuit, actions taken in violation of the automatic stay are void *ab initio*.  *See generally Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir.1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir.1987)); *see also Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 207 (2d Cir. 2014) (citing *In re Colonial Realty Co.*, 980 F.2d at 137 ("[S]o central is the § 362 stay to an

orderly bankruptcy process that actions taken in violation of the stay are void and without effect").

Due to its "fundamental importance to a debtor's bankruptcy case, the automatic stay 'is broadly written and broadly construed.'" *In re Grinspan*, 597 B.R. 725, 733 (Bankr. E.D.N.Y. 2019) (quoting *In re NextWave Pers. Commc'ns, Inc.*, 244 B.R. 253, 271 (Bankr. S.D.N.Y. 2000)); *In re TS Emp., Inc.*, 597 B.R. 494, 533 (Bankr. S.D.N.Y. 2019) ("[t]he scope of the stay is broad, encompassing almost any type of formal or informal action taken against the debtor or the property of the bankruptcy estate."). The continuation of a foreclosure action against a debtor that is a named defendant in the action violates the automatic stay. 11 U.S.C. § 362(a)(1) (Bankruptcy Code section 362(a)(1) stays "the commencement or continuation . . . of [an] action or proceeding against the debtor that was or could have been commenced before the commencement of the case."). A foreclosure sale of a debtor's property also violates the automatic stay. 11 U.S.C. § 362(a)(3) ("a [bankruptcy] petition . . . operates as a stay . . . of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.").

Bankruptcy Code section 362(k) provides that "an individual injured by any willful violation of the stay . . . shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

Debtors seeking damages for a violation of the automatic stay under Bankruptcy Code section 362(k) must prove: "(1) that a bankruptcy petition was filed, (2) that the debtor is an individual, (3) that the creditor received notice of the petition, (4) that the creditor's actions were in willful violation of the stay, and (5) that the debtor suffered damages." *In re Leiba*, 529 B.R. 501, 506 (Bankr. E.D.N.Y. 2015); *see Garland v. Lawton* (*In re Garland*), Case No. 99-10120,

Adv. Pro. No. 99-1076, 2001 WL 34798966 (Bankr. D. Vt. Aug. 1, 2001).  The debtor must

prove each element by a preponderance of the evidence.  *In re Wright*, 328 B.R. 660, 663

(Bankr. E.D.N.Y. 2005).  "[This] . . . simply requires the trier of fact to believe that the existence

of a fact is more probable than its nonexistence. . . . and "the Court is entitled to make credibility

findings of the witnesses and testimony.'"  *Grinspan*, 597 B.R. at 733 (citations omitted).

The term "'willful' in the context of § 362(k) means 'any deliberate act taken by a

creditor in violation of the automatic stay, which the violator knows to be in existence.'"  *In re*

*Leiba*, 529 B.R. at 507 (quoting *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re*

*Crysen/Montenay Energy Co.*), 902 F.2d 1098, 1105 (2d Cir. 1990)).  A "'specific intent to

violate the stay is not required; instead, general intent in taking actions which have the effect of

violating the automatic stay is sufficient to warrant damages.'"  *Grinspan*, 597 B.R. at 744

(quoting *In re Jean-Francois*, 532 B.R. 449, 454 (Bankr. E.D.N.Y. 2015)).

In contrast to a willful violation of the automatic stay, a technical violation of the

automatic stay occurs when a creditor violates the stay without notice or knowledge of the

commencement of a case.  *In re Manchanda*, No. 16-10222 (JLG), 2016 WL 3034693, at *4

(Bankr. S.D.N.Y. May 19, 2016).  No liability will result for the inadvertent violator.  *Id.*

However, "upon receiving actual notice of the commencement of a bankruptcy case, a creditor

has an affirmative duty under § 362 to take the necessary steps to discontinue its collection

activities against the debtor."  *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 347

(Bankr. S.D.N.Y. 1998) (awarding actual and punitive damages based on creditor's failure to

discontinue postpetition wage garnishment); *see Tyson v. Hunt (In re Tyson)*, 450 B.R. 754,767

(Bankr. W.D. Tenn. 2011) (Purchaser's refusal to cooperate in voiding postpetition foreclosure

sale was willful stay violation warranting award of actual damages to debtor.); *In re Braught*,

307 B.R. 399, 401 (Bankr. S.D.N.Y. 2004) ("It is not the debtor's responsibility to take action that ensures that she receives the protection of the automatic stay; rather the creditor bears the burden of seeking relief from the automatic stay before taking post-petition collection actions.").

"Failure to undo a technical violation may elevate the violation to a willful one." *In re Miszko*, 627 B.R. 809, 819 (Bankr. S.D.N.Y. 2021) (quoting 3 Collier on Bankruptcy ¶ 362.12[2] (16th ed. 2021)); *see In re Franklin*, 614 B.R. 534, 544 (Bankr. M.D.N.C. 2020) (Creditor's activation of vehicle "kill switch" was technical violation that became a willful violation when creditor refused to deactivate "kill switch" after learning of bankruptcy case.).

Bankruptcy courts are authorized to annul the automatic stay effective as of the petition date, which, in effect, validates actions taken in violation of the automatic stay that would otherwise be void. 11 U.S.C. § 362(d) (authorizing Court to terminate, annul, modify or condition the automatic stay"). Courts may use the power to retroactively annul the automatic stay to protect mortgagees that foreclose on property without notice or knowledge that their sale violated the stay. *See e.g. In re Stockwell*, 262 B.R. 275, 283 (Bankr. D. Vt. 2001) (granting retroactive relief from the automatic stay to date of foreclosure). However, that protection is afforded only to innocent mortgagees that request relief promptly and otherwise would be entitled to stay relief. *See e.g. In re Crichlow*, 666 B.R. 441, 460 (Bankr. E.D.N.Y. 2024) (creditor not entitled to retroactive stay relief due to failure to exercise diligence in inquiring about bankruptcy filing); *In re Ebadi*, 448 B.R. 308, 319 (Bankr. E.D.N.Y. 2011) (creditor not entitled to retroactive stay relief because creditor was undisputably aware of bankruptcy case.).

Like the case at bar, in *Houck v. Substitute Trustee Services (In re Houck)*, 597 B.R. 820 (Bankr. W.D. N.C. 2019), a mortgagee conducted a foreclosure sale without notice of the automatic stay but failed to correct its actions for years. In *Houk*, the debtor filed two chapter 13

bankruptcy cases within three months. *Id*. at 824. Each case was filed on the eve of foreclosure and dismissed due to the debtor's failure to prosecute the bankruptcy case. *Id*. at 834. The mortgagee conducted a foreclosure sale four days after the debtor commenced his second bankruptcy case. *Id*. at 832. The mortgagee received notice of the second bankruptcy case after the foreclosure sale but failed to take steps to avoid the sale. *Id*. Instead, the mortgagee litigated with the debtor for the next several years. *Id.* at 824 - 25.

The bankruptcy court found the foreclosure sale was a technical violation of the automatic stay because the mortgagee concluded the sale before it received notice of the second bankruptcy case. *Id.* at 832. However, the mortgagee willfully violated the stay when it received notice of the bankruptcy case and went on to sign and record the trustee's deed. *Id.* at 834. The mortgagee admitted its standard operating practice was to wait and see if a bankruptcy case was dismissed before taking steps to undo a foreclosure sale that violated the automatic stay, a practice the bankruptcy court described as abhorrent. *Id.* at 834. The bankruptcy court observed that the dismissal of a debtor's bankruptcy case would not revive or validate a foreclosure sale that violated the automatic stay. *Id.* at 835. The bankruptcy court also noted that the mortgagee could have requested the bankruptcy court to annul the automatic stay, which would have validated the foreclosure sale, but chose not to. *Id.* Although likely frustrated that the debtor was jockeying between state court and bankruptcy court; the court held the mortgagee had no right to ignore the effects of the automatic stay. *Id*. at 835.

Here, there is no dispute that the Debtor is an individual, he filed a bankruptcy petition, and Creditor foreclosed on the Property after the Debtor filed the petition.

Creditor argued the stay violation was not willful because it had not received notice of the bankruptcy petition prior to conducting the sale. Hr'g Tr. 5:12 – 6:4, Feb. 13, 2024, ECF No.

105.  Whether Creditor had notice of the bankruptcy case prior to conducting the sale is immaterial because after Creditor learned of the sale, it failed to remedy the stay violation for approximately five years.

Creditor claimed that the Debtor caused the delay through his State Court litigation tactics and bankruptcy filings.  *Id.* at 6:1-25.  Regarding the State Court litigation, Creditor argued it was trying to resolve the foreclosure action.  *Id*. at 13:23-25.  Creditor, however, admitted that a stipulation to vacate the deed was "easy," but it did not vacate the deed because the Debtor had moved in State Court for damages.  *Id*. at 13:25-14:10.  Essentially, Creditor decided not to vacate the referee's deed because the Debtor would not settle with Creditor respecting the damages resulting from the stay violation.  *Id.* at 6:21-25 ("[Creditor] did not oppose the [Debtor's State Court motion] seeking to vacate that Deed, it simply opposed any damage related to it.  So [Creditor] can't be held accountable for something that they couldn't prevent because all these delays that the Debtor created").

Regarding the bankruptcy filings, Creditor claimed it could not put back the deed because the Debtor filed bankruptcy cases in 2009 and 2010.  *Id.* at 6:10-12.  The Debtor's 2009 case was pending for two months and eight days and the 2010 case was pending for three months.  *Id*. at 14:17-24.  The Debtor's 2010 case was dismissed on October 10, 2010, but Creditor did not record the Order and Judgment that restored Property title to the Debtor until March 7, 2014 – about three and one-half years later.  H'rg Tr. 14:17-24, Feb. 13, 2024, ECF No. 105; Debtor Ex. 14.  Further, Creditor provided no legal authority for its assertion that putting the Property back in the Debtor's name would have violated the automatic stay arising in the 2009 and 2010 bankruptcy cases.  Assuming the automatic stay would have prevented Creditor from correcting

the Property deed, Creditor offered no explanation why it failed to move in bankruptcy court for relief from stay to put the Property back in Debtor's name.

Creditor willfully violated the automatic stay because Creditor had an obligation to take immediate steps to remediate the harm created by its stay violation once Creditor learned it violated the stay.  H'rg Tr. 12:1-10, Feb. 13, 2024.  Creditor was required to vacate the referee's deed promptly or to move in this Court for an order annulling the automatic stay and validating the sale.  Creditor did neither.  Debtor's State Court motion for damages did not relieve Creditor of its obligation to put title to the Property back in the Debtor's name.  *Id*. 14:11-15.  Further, Creditor offers no explanation how putting title to the Property back in Debtor's name would have precluded Creditor from defending itself against Debtor's demands for damages.  *Id*.  Creditor's decision to hold title to the Property hostage for over four years while it litigated with Debtor over the damages is not permitted by the Bankruptcy Code and Creditor's failure to restore title to the Debtor for almost five years is an egregious violation of the automatic stay.

## The Creditor Failed to Prove Laches

Although the Court found that Creditor willfully violated the automatic stay, the Court preserved Creditor's rights to prove its laches defense at trial.

> The burden is on the party claiming the defense of laches to demonstrate the following elements: '(1) conduct by an offending party giving rise to the situation complained of; (2) delay by the complainant in asserting his or her claim for relief despite the opportunity to do so; (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief; and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant.'

*Cohen v. Treuhold Capital Group, LLC (In re Cohen)*, 422 B.R. 350, 382 (E.D.N.Y. 2010) (quoting *Bailey v. Chernoff*, 45 A.D.3d 1113, 846 N.Y.S.2d 462, 465 (2007)).  The mere passage of time is insufficient to establish the defense of laches.  *In re Arana*, 456 B.R. 161, 174 (Bankr. E.D.N.Y. 2011).

16

The Creditor argues that the Debtor's delay in bringing its Bankruptcy Code section 362(k) claim is prejudicial. Cr. Resp. at 7, ECF No. 110. Had Creditor known of the Debtor's claim, it would have preserved its paper files to refute the Debtor's allegation that he notified Creditor of the bankruptcy case prior to the foreclosure sale. *Id.* As set forth above, whether the Creditor could prove it lacked notice or knowledge of the bankruptcy case prior to conducting the foreclosure sale is irrelevant. Creditor's willful violation of the stay is that it failed to remedy the stay violation for years after it learned its foreclosure sale violated the automatic stay. Therefore, the Court finds that Creditor has failed to satisfy its burden of proof that it was prejudiced by Debtor's delay in bringing the Bankruptcy Code section 362(k) claim.

### The Debtor's Actual Damages

Where a violation of the stay is willful, Bankruptcy Code section 362(k) mandates an award of actual damages. 11 U.S.C. § 362(k). Actual or compensatory damages should be awarded in the amount necessary to repair the injury and reimburse the costs caused by the stay violation. *In re Laskaratos*, 605 B.R. 282, 300 (Bankr. E.D.N.Y. 2019).

The Debtor demands the following in compensatory damages:

| **Description of Damages** | **Amount** |
|---|---|
| Lost rental income<br>$252,000.00 - for Units 2-R and 3-R, at $1,500/month per unit, from May 2009 to May 2016 (84 months)<br><br>$102,700.00 - for Unit 1-R (Unit 3), at $1,300/month, from October 2009 to May 2016 (79 months) | $354,700.00 |
| Payment of utilities for non-paying tenants, at $7,000 to 10,000/year, from October 2019 to early 2024 (4.5 years) | $31,500.00-$45,000.00 |
| Tax warrant/tax lien | $105,668.40 |
| Water bill | $6,037.67 |

| Description of Damages | Amount |
|---|---|
| New York City Department of Housing Preservation and Development ("HPD") assessments and tenant repairs<br>$3,484.17 – for door repair<br>$40,000.00 – for fire damage | $43,484.17 |
| Lost Federal Emergency Management Agency ("FEMA") aid and insurance coverage | $48,000.00 |
| Overcharged mortgage interest | $716,157.15 |
| Attorneys' fees and costs for state court proceedings seeking to void referee's deed | $55,000.00 |
| Attorneys' fees and costs for eviction proceedings to evict non-paying tenants, at $2,500/unit | $7,500.00 |
| Attorneys' fees and costs for bankruptcy court stay violation proceedings | $473,112.60 |
| Emotional distress and escalation of Debtor's post-traumatic stress disorder due to the stay violation | $252,000.00 |
| **TOTAL** | **$2,093,159.99-<br>$2,106,659.99** |

Debtor's Mem. Law Supp. Post-Trial Br. at 16-17, ECF No. 102.

Lost Rental Income

The Debtor seeks $354,700 in damages for lost rental income from the Property. The Debtor testified that after the foreclosure sale, the Creditor commenced eviction proceedings against the tenants prompting the tenants to stop paying rent. Trial Day 1 Tr. 71:3-15. The Debtor testified that two of his apartments (Units 2-R and 3-R) were vacant from approximately May 2009 until 2016, approximately 84 months, resulting in a $252,000 loss. *Id.* at 77:4-78-3. The Debtor also testified that a third apartment remained vacant for approximately 79 months resulting in a $102,000 loss. *Id.* at 79:1-14.

On cross-examination, the Debtor acknowledged he had leased the three units from 2008 through 2022.  As Creditor notes, the Debtor testified he rented units to the following tenants:

| **Tenant** | **Rental Period** | **Trial Day 1 Tr.** |
|:---:|:---:|:---:|
| Sherry Trice | March 2010 to Sept. 2011 | 137:4-12 |
| Diane McKee | Nov. 2011 to Oct. 2012 | 137:13-25 |
| Diane Johnson | Jan. 2013 to 2022 | 138:1-17 |
| James and Denise Gambel | Sept. 2013 to July 2015 | 138:18-25; 139:1-17 |
| Elizabeth Guzman | Dec. 2008 to Nov. 2009 | 139:18-25; 140:1-9 |
| Chavonne Gilmore | Dec. 2011 to Nov. 2012 | 140:12-25; 141:1-13 |
| Latoya Thompson | April 2014 to March 2015 | 140:14-23 |

Cr. Mem. Law Opp'n at 13, ECF No. 100.  The Debtor also testified on cross-examination that he collected rents from those tenants.  Trial Day 1 Tr. 141:24-25; 142:1-2.  The tenants and rental periods referenced above do not appear to cover the entire period when the Property was in the Creditor's name.  However, the Debtor's testimony on cross-examination undermines his claim that he was unable to lease the units or collect rent due to the foreclosure.

The Debtor contends that while the Property title remained in Creditor's name, it prevented Debtor from receiving Section 8 reimbursement for low-income tenants.  Debtor's post-Trial Mem. at 14, ECF 102.  However, Debtor did not testify or provide other evidence that he lost Section 8 rent reimbursement benefits.  He only noted that three of his tenants received Section 8 assistance.  Trial Day 1 Tr. 72:7-12; 139:18-23; 141 9-11.  Additionally, the Debtor testified that rental assistance became available in 2019 due to the Covid pandemic.  *Id.* at 125:5-126:10.  The Debtor testified he was unaware that he could apply for assistance, and he believed

that his tenants had to apply.  *Id.*  Further, he testified he did not believe his tenants were eligible for assistance because they were employed.  *Id.*

Accordingly, the court finds the Debtor has failed to satisfy his burden by a preponderance of the evidence that his damages include lost rent or Section 8 or other public benefits.

Utility Payments

The Debtor seeks up to $45,000 in damages to reimburse him for utility bills paid on behalf of non-paying tenants from October 2019 to early 2024.  The Debtor has failed to satisfy his burden of proof that those damages were caused by Creditor's violation of the automatic stay. Although it is true that Creditor had title to the Property from April 26, 2019 through September 24, 2021, the Debtor testified that tenants stopped paying utilities due to Covid and he could not evict his tenants because the courts were closed.  Tr. Day 1 123:23-124:4.  Therefore, the Debtor has failed to prove that Creditor's foreclosure caused the tenants to stop paying utilities.

Water Bill

The Debtor seeks $6,037.67 in damages for water and sewer charges for the Property. Debtor's Ex. 25, Trial Day 1 Tr. 82:13-83:22.  The Debtor does not dispute that he or his tenants had possession of the Property, and he had title to the Property when the water charges were incurred, or that Debtor has not paid the water bill.  Trial Day 1 Tr. 164: 5-165:3.  The Debtor includes the water charges as part of his request for compensatory damages because Creditor changed the account from the Debtor's name to the Creditor's name.  *Id.* at 165:5-13.  After Creditor transferred title to the Property back to the Debtor, Creditor failed to change the account back to the Debtor's name.  *Id.*  Debtor testified he could not change the account absent cooperation from Creditor.  *Id.* at 165:13-21.  Debtor, however, did not testify that Creditor

20

refused to cooperate or that he even asked Creditor to assist him to change the account. Accordingly, the Debtor is not entitled to compensatory damages for the water bill.

Tax Warrant/Tax Lien

The Debtor seeks $105,668.40 in reimbursement for New York State income tax liabilities resulting from Creditor's foreclosure sale. The New York State Department of Taxation and Finance issued a Tax Warrant, that was recorded against the Property. Debtor's Ex. 24; Trial Day 1 Tr. 1 99:1-102:22. The warrant states the Debtor owes $105,665.40 for the period ending December 31, 2008 in taxes, penalties and interest. Debtor's Ex. 24. The Debtor testified he was shocked to receive the income tax bill because he was not making money. Trial Day 1 Tr. 99:1-5. As a result of the Debtor's failure to pay the taxes, New York State suspended the Debtor's driver's license for five years. *Id.* at 102:23-25; 103:13-20; 155:4-9.

Creditor does not dispute the taxes resulted from the foreclosure sale. Creditor argues Debtor should not be compensated for those taxes because the Debtor resolved the tax issue without paying the taxes. Cr. Mem. Law Opp'n at 15, ECF No. 100; Trial Day 1 Tr. 152:4-11. Creditor is correct, the Debtor is not entitled to compensatory damages for the taxes assessed due to the foreclosure sale if the tax liability was resolved without requiring the Debtor to pay the taxes. However, as set forth below, the Court will consider the tax warrant in connection with the Debtor's claim for damages for emotional distress.

HPD Assessments and Tenant Repairs

The Debtor seeks damages of $3,484.17 based on an HPD assessment of liens on the Property. The Debtor testified that his tenant called 311 after a door fell off its hinges. Trial Day 1 Tr. 96:11-14. HPD repaired the door and put a lien on the Property for the cost of the repair and for other repairs as well. *Id.* at 96:1-23. The Debtor failed to show that Creditor's stay

violation caused the HPD lien.  To the contrary, it appears the lien resulted solely from the tenant's actions.

The Debtor also seeks $40,000.00 in compensatory damages because a tenant started a fire in the bathroom of her apartment.  *Id.* at 72:15-24.  The tenant did not give the Debtor the opportunity to repair the damage and instead called a city agency to do the repairs.  *Id.* at 73:1-6.  The Debtor did not provide evidence at trial concerning the city's charge to fix the apartment.  The Debtor did not provide a causal link between the Creditor's stay violation and the fire damage.

FEMA Benefits and Insurance Proceeds

The Debtor testified the Property was damaged due to Hurricane Sandy in 2012, but he was unable to apply for FEMA aid for the $20,000 of repairs he made to the Property because he did not have title to the Property.  Trial Day 1 Tr. 94:15-95:25.  The Creditor argues the Debtor should not receive compensatory damages because the Debtor failed to show he applied for and was denied relief or that he contacted the Creditor or the loan servicer to assist with FEMA relief.  Cr. Mem. Law Opp'n, at 14 n. 12, ECF No. 100.

The Creditor did not cross examine the Debtor regarding the FEMA benefits and there is nothing in the record contradicting Debtor's testimony that he would have been denied FEMA benefits had he applied because he did not have title to the Property.  Further, the Creditor failed to introduce evidence that it would or could have helped the Debtor obtain FEMA benefits.  Therefore, the Debtor has satisfied his burden of proof that he incurred damages of $20,000 in lost FEMA benefits

The Debtor testified that Creditor's violation of the stay impacted his ability to collect insurance proceeds when a car knocked down his fence and crashed into the Property.  Trial Day

1 Tr. 92:13-95:25.  The Debtor testified his insurer initially refused to pay for repairs because the Debtor did not have title to the Property.  *Id.* at 92:23-93:1.  Ultimately, the Debtor received approximately $10,000 in insurance proceeds.  Trial Day 1 Tr. 159:14-15; Debtor's Ex. 26.  The Debtor did not testify he was entitled to additional insurance proceeds that were not paid.  Accordingly, the Debtor should not receive an award for lost insurance proceeds.  However, the Debtor waited years to receive the insurance proceeds.  Trial Day 1 Tr. 93:1-8.  The failure of the insurance company to compensate the Debtor for years because he did not have title to the Property is considered below in connection with the Debtor's claim for damages for emotional distress.

### Overcharged Mortgage Interest

The Debtor claims he is entitled to $716,157.15 in damages because the Creditor continued to charge interest on the Note from and after the 2008 foreclosure sale.  Trial Day 1 Tr. 53:2-54:4; 65:8-19.  The Debtor testified that after title was restored to his name, Creditor was seeking over $900,000 in satisfaction of its claim and Debtor could not afford to pay that amount.  Trial Day 1 Tr. 53:2-54:4; 65:8-19, 114:12-18.

The Creditor argues the claim must be rejected because the Debtor never paid the Creditor $716,157.15 in interest; accordingly, he was not damaged.  Cr. Resp. Debtor's Post-Evidentiary Hr'g Initial Br. at 20, ECF 104.  Creditor also argues "[t]he extended delay in reaching a final conclusion to the mortgage foreclosure proceedings has been due to Debtor's own conduct.  Debtor filed back-to-back bankruptcy filings with no intent to bring his loan current by curing his arrearages and reorganize his debt.  He then continuously litigated the 2011 Foreclosure Action."  *Id*. at 22.

The Creditor has not provided the Court with legal authority supporting its entitlement to post-foreclosure sale interest.  Further, as explained above, neither Debtor's State Court litigation nor his 2009 or 2010 bankruptcy filings delayed Creditor from putting title to the Property back in the Debtor's name.  *Supra* at 15-16.  Creditor may be correct that the Debtor should not be compensated for interest payments he did not make.  However, Creditor should not be entitled to interest after it foreclosed on the Property in violation of the automatic stay and refused to restore title to the Debtor.

Although the Debtor solely requested monetary compensation for Creditor's imposition of post-foreclosure sale interest, "a final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  "Under Rule 54(c), Fed. R. Civ. P, a federal court has the power to grant appropriate relief, including injunctive relief, to the winning party even if not demanded in the pleadings."  *F&M Schaefer Corp. v. Elec. Data Sys. Corp.*, 430 F. Supp. 988, 993 (S.D.N.Y. 1977), aff'd without opinion, 614 F.2d 1286 (2d Cir. 1979); *see First Nat. Bank of Hollywood v. Am. Foam Rubber Corp.*, 530 F.2d 450, n.3 (2d Cir. 1976); *Bird v. Comput. Tech., Inc.*, 364 F.Supp. 1336, 1345 (S.D.N.Y 1973) ("Declaratory relief may be awarded although it is not prayed for in the complaint").

Based on the foregoing, the Court finds the Creditor should be enjoined from seeking, enforcing, or collecting interest, fees, costs, or charges on the Note or Mortgage that accrued on and after December 5, 2008, which is the date the Creditor violated the automatic stay by foreclosing on the Property.  The Court believes this injunctive relief is necessary to restore the Debtor to the status quo ante.  Accordingly, if the Creditor proceeds to foreclosure, the Debtor may redeem the Property, to the extent permitted under applicable New York law, for the

amount that would have been due to Creditor as of December 5, 2008.  If the Debtor does not redeem the Property, and the Creditor sells the Property at a foreclosure sale, foreclosure sale proceeds shall be remitted to the Creditor solely to the extent of the amounts due to the Creditor under the Note and Mortgage as of December 5, 2008.  Surplus proceeds shall be remitted to the Queens County Clerk who may distribute surplus proceeds to the Debtor.  The Court retains jurisdiction to fix the amounts due to Creditor under the Note and Mortgage as of December 5, 2008.

Attorneys' Fees

Actual damages for a willful violation of the automatic stay includes costs and attorneys' fees.  11 U.S.C. § 362(k).  Attorneys' fees include:

> fees incurred out of court, as when a debtor retains an attorney to call or write a creditor to demand that it end its actions violating the stay. If those efforts fail, a debtor can also incur attorney's fees in court by pursuing an action to end a stay violation and to recover damages. If litigation is necessary to afford a complete remedy to a debtor, § 362(k) allows a judgment for the attorneys' fees and costs incurred in prosecuting it.

*Springer v. RNBJ RTO LLC (In re Springer)*, Case No. 15-33254, Adv. Pro. No. 16-3007, 2017 WL 3575859, at *5 (Bankr. W.D. Ky. Aug. 16, 2017) (internal citations omitted); *see Young v. Repine (In re Repine)*, 536 F.3d 512, 522 (5th Cir. 2008).

Federal Rule of Civil Procedure 54(d)(2)(A) - (C) and (E), made applicable to this contested matter through Rules 9014(c) and 7054 of the Federal Rule of Bankruptcy Procedure, governs the procedures to be used in awarding attorneys' fees and states in relevant part:

> (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

> (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:

> (i) be filed no later than 14 days after the entry of judgment;

(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

(iii) state the amount sought or provide a fair estimate of it; and

(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

(C) Proceedings. Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

(E) Exceptions. Subparagraphs (A)–(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. §1927.

Fed. R. Civ. P. 54.[2]  Rule 54(d)(2):

establishes a procedure for presenting claims for attorneys' fees, whether or not denominated as "costs." It applies also to requests for reimbursement of expenses, not taxable as costs, when recoverable under governing law incident to the award of fees. *Cf. West Virginia Univ. Hosp. v. Casey*, 499 U.S. 83 (1991), holding, prior to the Civil Rights Act of 1991, that expert witness fees were not recoverable under 42 U.S.C. § 1988. As noted in subparagraph (A), it does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury.

Fed. R. Civ. P. 54 Advisory Committee Notes (1991).

A debtor's claim for costs and attorneys' fees incurred in litigating a claim under

Bankruptcy Code section 362(k) may be proven with debtor's other claims for damages or

requested by post-trial motion.  *See In re Salov*, 510 B.R. 720, 734-35 (Bankr. S.D.N.Y. 2014)

(awarding compensatory damages consisting solely of attorneys' fees and punitive damages);

*Gates v. RAC Acceptance Texas, LLC (In re* Gates), 621 B.R. 129, 141 (Bankr. W.D. Texas 2020)

---

[2] Rule 7054-1 of the Local Bankruptcy Rules for the Eastern District of New York adopts District Rule 54.1 in cases and adversary proceedings.  District Rule 54.1 states in part: (7) Attorney's Fees and Related Costs. Attorney's fees and disbursements and other related fees and paralegal expenses are not taxable except by order of the court. A motion for attorney's fees and related nontaxable expenses must be made within the time period prescribed by Fed. R. Civ. P. 54.

(concluding that Rule 7054 permits debtor to seek attorneys' fees and costs under Bankruptcy Code section 362(k)(1) by separate motion after a judgment is rendered).

The Debtor testified at trial that over the course of 18 years of litigation he incurred approximately $100,000 in attorney's fees for services by three different attorneys.  Trial Day 1 Tr. 83:10-25; 84: 1-2; 92:7-14.  Debtor's post-trial memorandum states that Debtor incurred: $55,000 in attorneys' fees and costs for state court proceedings seeking to void the referee's deed; $7,500 in attorneys' fees and costs to evict non-paying tenants; and $465,363.50 in attorneys' fees and $7,750.10 in costs for the bankruptcy stay violation proceedings.  Debtor's Mem. Law Supp. Post Trial Br. at 17, ECF No. 102.

The Creditor objects to any award of attorneys' fees because the Debtor's testimony that he incurred $100,000 in attorneys' fees was not corroborated by documentary evidence and the $535,612.60 request for fees and costs contained in the post-trial memorandum was raised after the close of evidence.  Cr. Resp. Debtor's Post-Evidentiary Hr'g Initial Br. at 14-15, ECF No. 104.

The Creditor did not cross-examine the Debtor concerning the attorneys' fees or introduce evidence contradicting Debtor's testimony that he incurred approximately $100,000 in attorneys' fees.  Based on the Debtor's testimony and the post-trial submission, Debtor is awarded $55,000 in attorneys' fees and costs incurred in his State Court litigation due to the Creditor's violation of the automatic stay.  The Debtor is not entitled to $7,500 in attorneys' fees to evict tenants that did not pay rent or utilities.  The Debtor failed to carry his burden to prove that the tenants stopped paying rent and utilities due to Creditor's stay violation.  *See Supra* at 19-21.

Regarding Debtor's request for $465,363.50 in attorneys' fees and $7,750.10 in costs for litigating the claim in this Court, the Debtor may move for the allowance of those fees under Rule 7054, provided the motion is filed within 14 days of entry of this memorandum decision, on no less than 21 days' notice to Creditor.[3]

Emotional Distress

Compensatory damages for a violation of the automatic stay may include an award for emotional distress "upon a showing of 'clear evidence to establish that significant harm occurred as a result of the violation.'" *Bace v. Babitt (In re Bace)*, No. 11 Civ. 6065 (PAC) (HPB), 2012 WL 2574750, at *3 (S.D.N.Y. July 3, 2012) (quoting *Dawson v. Wash. Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004)). "Significant emotional harm must be established by corroborating evidence, or may be presumed where the circumstances surrounding the violation are sufficiently egregious." *In re Voll*, 512 B.R. 132, 138 (Bankr. N.D.N.Y. 2014). A plaintiff's credible testimony may be sufficient evidence to establish a debtor's entitlement to damages for emotional distress. *In re Laskaratos*, 605 B.R. at 311 (citing *Lansaw v. Zokaites (In re Lansaw)*, 853 F.3d 657, 670 (3d Cir. 2017)).

Calculating damages for emotional distress can be subjective. *Spence v. Bd. of Educ.*, 806 F.2d 1198, 1203 (3d Cir. 1986) (Higginbotham, J., concurring) (quoting *McDonald v. United States*, 555 F. Supp. 935, 971 (M.D. Pa. 1983)) ("there is 'no legal yardstick by which to measure accurately reasonable compensation' for injuries such as emotional distress.'"). Decisions from other courts may inform a court's determination of damages for emotional

---

[3] The Debtor's attempt to lob the request for litigation fees in his post-trial brief is ill-considered because, among other things, it deprived the Creditor of the opportunity to obtain discovery from Debtor's counsel regarding the accuracy and reasonableness of the fees and costs requested. The Court believes the better practice would have been for the Debtor to seek a bifurcated trial or, at a minimum, to alert the Court and the Creditor prior to the close of evidence that the Debtor intended to make a post judgment motion for fees.

distress. *Lansaw v. Zokaites* (*In re Lansaw*), 2015 WL 224093, at *10 (Bankr. W.D. Pa. Jan. 14, 2015), aff'd, 853 F.3d 657 (3d Cir. 2017).

Instructive is *In re Dawson*, 346 B.R. 503 (Bankr. N.D. Cal. 2006). In *Dawson*, two days after husband and wife filed for bankruptcy, the mortgagee conducted a foreclosure sale, purchased the debtors' real property, and recorded its deed. *Id.* at 508. The mortgagee served debtors with a three-day notice to quit approximately two weeks later, and the following week commenced an unlawful detainer action. *Id.* A few days after commencing the unlawful detainer action, the mortgagee learned its foreclosure sale violated the automatic stay. *Id.* The mortgagee did not rescind its foreclosure sale until five months after it learned it violated the automatic stay. *Id.* at 509. The court found that the mortgagee willfully violated the automatic stay, and the debtors were entitled to damages. *Id.* at 510. The debtor-husband requested damages for emotional distress claiming that after being served with the three-day notice to quit and the complaint in the unlawful detainer action, he suffered acute fear that he and his family would be homeless. *Id.* Due to the fear, he required physical therapy to relieve muscle tension, and increased blood pressure medication. *Id.* He began to drink excessively and required assistance from the Veteran's Administration and Alcoholics Anonymous. *Id.* The bank argued the debtor was not entitled to damages for emotional distress because there was no proof of the causal connection between the alleged damages and the stay violation. *Id.* at 511. The record was clear that the debtor had significant physical, emotional, and financial problems prior to the stay violation and the debtor could not recall when he started abusing alcohol. *Id.* Additionally, the debtor delayed in bringing his action for damages for violation of the stay. *Id.* The bank argued that delay evidenced that the debtor was not seriously distressed. *Id.*

The court found the debtor had established causation because "the circumstances were such that any reasonable person similarly situated would have suffered serious emotional distress damages." *Id.* at 511.  The court agreed with the mortgagee that facts other than the stay violation contributed to the debtor's emotional distress.  *Id.* at 512.  "However, to establish causation, [a debtor] is not required to prove that the [mortgagee's] stay violation was the sole cause of [debtor's] emotional distress.  Causation requires only proof that the offending conduct was a substantial factor." *Id.*  The court awarded the debtor $20,000.00 as damages for the debtor's emotional distress.  *Id.*

In the instant case, the Debtor seeks damages of at least $252,000 for emotional distress.  Creditor asserts Debtor is not entitled to damages for emotional distress because the distress was caused by other factors, including his tours in Iraq, experience as a 9/11 first responder, service in the National Guard and police department, and the collapse of his marriage.  Cred. Resp. at 20-21, ECF No. 104.  Creditor also argues Debtor is not entitled to damages for emotional distress because he has failed to demonstrate any adverse medical determinations.  Cr. Mem. Law Opp'n, at 18, ECF No. 100; Cred. Resp. at 20-21, ECF No. 104.

The Debtor testified credibly as to the adverse impact on his life and his health and Creditor has not produced evidence to the contrary.  Further, the Creditor's violation of the automatic stay lasted years and is sufficiently egregious for the Court to presume the Debtor's distress.  The Court finds the Debtor is entitled to compensation for emotional distress because a reasonable person under the same circumstances would have suffered severe emotional distress.  Those circumstances included:

> a.  learning his home had been sold at a foreclosure sale, notwithstanding the
>     foreclosure sale was stayed by the commencement of a bankruptcy case.

b. the Creditor's refusal to file a corrective deed for almost five years, notwithstanding the Creditor's foreclosure sale was void.

c. the Creditor's commencement of actions to evict the Debtor and his tenants, notwithstanding Creditor's title to the Property was void.

d. the Debtor's inability to collect insurance proceeds promptly to pay for Property damage.

e. the Debtor's inability to obtain FEMA assistance to fund critical repairs to the Property.

f. the Debtor's receipt of a tax bill exceeding $100,000 due to Creditor's foreclosure.

g. the suspension of the Debtor's driver's license for five years due to the unpaid tax bill.

h. the years of litigation with Creditor to compel the Creditor to reinstate title to the property.

i. learning the Creditor was charging interest on the mortgage that the Creditor had foreclosed and that the amount owed on the Note and Mortgage had ballooned to almost $1,000,000.

The Debtor is entitled to an award for emotional distress equal to $252,000, which represents an award of approximately $131.59 per day for the 1,915-day period from December 5, 2008 (the date of the foreclosure sale) to March 7, 2014 (the date Creditor restored title to the Property to the Debtor).

<u>Aggregate Amount of Compensatory Damages</u>

In summary, the Debtor is entitled to $327,000 in actual damages, representing the sum of $20,000 in damages from Debtor's inability to obtain FEMA funding for Property repairs, $55,000 in attorneys' fees and costs related to State Court litigation, and $252,000 in damages for emotion distress, plus an award of attorneys' fees and costs for litigating the Debtor's 362(k) claims, which fees and costs will be determined after the Debtor files his post-judgment motion. Additionally, the Debtor is entitled to injunctive relief that prohibits Creditor from enforcing its Note and Mortgage except to the extent of the amount owed to Creditor as of December 5, 2008.

## **The Debtor is Entitled to an Award of Punitive Damages**

Bankruptcy Code section 362(k) empowers the Court to award punitive damages, provided the court makes "[a]n additional finding of maliciousness or bad faith on the part of the offending creditor that warrants the further imposition of punitive damages." *In re Crysen/Montenay Energy* Co., 902 F.2d 1098, 1105 (2d Cir. 1098); *see In re Ebadi*, 448 B.R. at 320 ("Punitive damages . . . are only appropriate where the stay violation was conducted in bad faith, with malice, or in a particularly egregious manner."); *Compare In re Robinson*, 228 B.R. 75, 86 (Bankr. E.D.N.Y. 1998) (no finding of bad faith where mortgagee vacated judgment entered postpetition, ten days after being notified of automatic stay violation) *with In re Harrison*, 599 B.R. 173, 175 (Bankr. N.D. Fla. 2019) (finding creditor acted egregiously by failing to ameliorate effect of postpetition foreclosure sale and denying debtor access to her property for more than 90 days). Whether to assess punitive damages lies within the discretion of the Court." *Grinspan*, 597 B.R. at 744.

In determining whether to award punitive damages, courts consider "the nature of the creditor's conduct, the creditor's ability to pay, the motives of the creditor, any provocation by

the debtor, and the creditor's level of sophistication." *In re Jean-Francois*, 532 B.R. 449, 459 (Bankr. E.D.N.Y. 2015). A "[c]ourt must award punitive damages that are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition. In other words, punitive damages should be awarded in the amount that is needed to deter future stay violations of this kind." *Id*. at 460 (internal citations and quotes omitted).

Generally, an award of punitive damages is calculated by multiplying the actual damages by a single-digit multiplier. *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008); *In re Laskaratos*, 605 at 315 ("awards of punitive damages may wisely be assessed in reasonable proportion to the actual or compensatory damages that are shown."); *In re Davis*, 651 B.R. 192, 195 (Bankr. S.C. 2023) (awarding punitive damages of two times actual damages"); *In re Brodgen*, 588 B.R. 625, 632 (Bankr. M.D. Ala. 2018) (awarding punitive damages of two times actual damages); *In re Lyubarsky*, 615 B.R. 924, 939 (Bankr. S.D. Fla. 2020) (awarding punitive damages of two times compensatory damages); *Edwards v. B & E Transport, LLC (In re Edwards)*, 607 B.R. 530, 538 (Bankr. W.D. Va. 2019) (awarding punitive damages of one and one-half times actual damages).

However, "where actual damages are low, the ratio of actual damages to punitive damages has less significance because a simple multiple of actual damages would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter." *In re Franklin*, 614 B.R. at 550 (internal quotations omitted.); *Budget Service Co. v. Better Homes of Va., Inc*., 804 F.2d 289 (4th Cir. 1986) (affirming bankruptcy court's award of punitive damages, which was approximately twenty-eight times compensatory damages).

The Court awards Debtor $1,308,000 in punitive damages, which is four times the actual damages awarded. A significant award is necessary because of the egregious nature of the

Creditor's conduct, which was to refuse to remediate its stay violation for over four years to coerce the Debtor to settle his claims against Creditor. The Creditor offered no explanation for its conduct except that the Debtor refused to negotiate with Creditor, continued to litigate in State Court, and filed additional bankruptcy cases. However, none of Debtor's refusal to settle, his continuation of State Court litigation, nor his bankruptcy cases constitute provocation. Rather, the Debtor's actions were reactions to Creditor's continued stay violation. The Court presumes the Creditor is sophisticated and able to pay because it is a national financial institution. Creditor did not introduce evidence to the contrary. Further, the Court believes a substantial award is required to deter future misconduct by Creditor.

### The Debtor is Not Entitled to Judgment Against PHH

Debtor requests this Court hold PHH jointly and severally liable with Creditor for actual and punitive damages. Mem. Law in Supp. Post-Trial Br. at 47, ECF No. 102. Debtor's request is denied because the Debtor's Motion requested damages from Creditor and failed to provide notice to PHH that he was seeking damages from PHH as well.

### CONCLUSION

**WHEREFORE**, for the reasons set forth in this memorandum, the Court holds that:

a. Debtor is awarded $327,000 in compensatory damages and $1,308,000 in punitive damages;

b. Creditor shall be enjoined from enforcing or collecting interest, fees, costs, or charges on the Note or Mortgage that accrued on and after December 5, 2008. The Court shall retain jurisdiction, concurrent with the State Court, to determine the amount due on the Note and Mortgage as of December 5, 2008; and

c. to the extent Debtor seeks attorneys' fees and costs in connection with litigating his Bankruptcy Code section 362(k) claim, Debtor shall file a post judgment motion within fourteen days of entry of this memorandum.

Within 14 days of entry of this Decision, Debtor shall settle a proposed Order and Judgment on Creditor, on fourteen days' notice, that memorializes the Court's holdings.



Dated: January 9, 2026
         Brooklyn, New York

                                              **Jil Mazer-Marino**
                                        **United States Bankruptcy Judge**